73 Cal.Rptr.3d 34 (2008)
160 Cal.App.4th 701
The PEOPLE, Plaintiff and Respondent,
v.
Raul Anthony LEAL, Defendant and Appellant.
No. H031174.
Court of Appeal of California, Sixth District.
February 28, 2008.
*36 Jonathan E. Berger, Law Offices of Jonathan E. Berger, Los Angeles, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Stan Helfman, Supervising Deputy Attorney General, Aileen Bunney, Deputy Attorney General, for Plaintiff and Respondent.
*35 DUFFY, J.
Following denial of his motion to suppress evidence (Pen.Code, § 1538.5),[1] defendant Raul Anthony Leal pleaded no contest to obliterating the identification of a firearm (§ 12090). The trial court placed defendant on probation for three years subject to various conditions.
On appeal, defendant contends that the trial court erred by denying his motion to suppress. He argues that the search conducted incident to his arrest was beyond the scope of the arm's-reach rule of Chimel v. California (1969) 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. He also challenges the imposition of a probation condition that he may not be present at any court proceeding or, in any courthouse building unless he is scheduled for a court hearing or has the permission of his probation officer. He contends that the condition is unreasonable and violates his constitutional rights to travel and to attend court proceedings.
Because we find that the search conducted following defendant's arrest violated the Fourth Amendment to the United States Constitution, we will reverse the judgment.

BACKGROUND
Defendant was charged by a complaint filed August 11, 2005, with obliterating the identification of a firearm (§ 12090) and actively participating in a criminal street gang (§ 186.22, subd. (a)), both felonies. The complaint further alleged that the section 12090 offense was committed for the benefit of or in association with a criminal street gang. (§ 186.22, subd. (b)(1).) On December 21, 2005, defendant filed a motion to suppress evidencea handgun seized from his house on the day of his arrest. On February 9, 2006, the trial court heard the motion in conjunction with the preliminary examination. The testimony at that hearing was as follows.
Salinas Police Sergeant David Shaw went to defendant's house around 4:48 p.m. on August 1, 2005, with four other officers in order to serve two outstanding misdemeanor arrest warrants on defendant. Two officers went to the back of the house while Shaw and two other officers went to the front. When Officer Schwaner knocked on the front door, they heard a male ask from inside the house, words similar to "who's there?" Officer Schwaner identified himself as a Salinas police officer. No further response came from *37 inside the house for quite some time, but one of the officers covering the back of the house heard a male voice coming from inside the back of the house shortly after the officers knocked on the front door.
The officers continued to knock on the front door and windows and called for defendant to emerge. They were aware that defendant's grandmother had reported that defendant might be armed with a gun and using drugs. Also, the police had heard that defendant "was upset with his daughter, who had told the grandmother that he was a gang member."
After almost 45 minutes, defendant opened the door and stood in the threshold. Officer Schwaner told him to turn around, handcuffed him, and led him away, explaining that there were warrants for his arrest. As Officer Schwaner was securing defendant in a patrol car about 30 to 38 feet away, the other officers entered the house to make sure nobody else was inside it.
After finding nobody else inside the house, Sergeant Shaw searched the area immediately adjacent to where defendant was standing when he was taken into custody. A small rocking recliner sat about a foot from where defendant had been standing at the front door. A sweatshirt was on the chair. Sergeant Shaw lifted the sweatshirt and found a semiautomatic pistol tucked down between the arm and the cushion of the recliner. The pistol, which was loaded and had had its serial numbers removed, was found about two or three minutes after defendant was arrested. No weapons were found on defendant.
After the trial court denied defendant's motion to suppress, he waived further hearing on the substantive charges and the court held him to answer. An information was filed February 14, 2006, alleging the same charges as had the complaint. On April 11, 2006, defendant renewed his motion to suppress, and the court considered it at a hearing on April 21, 2006.
The trial court recognized that the search was problematic under the Fourth Amendment to the United States Constitution, but ultimately found it valid. In so doing, it relied in part on federal circuit court decisions. The court stated, as relevant here: "I agree ... that there was no actual danger for the officers at the time that this search of the chair actually took place. [¶] ... [¶] [But the prosecutor] is exactly correct that what the federal courts are trying to do is set out a rule that the officers comprehend.... It has to be within the grabbing area of the arrestee and take place reasonably contemporaneous with the arrest.... [¶] ... [W]as it reasonable at that point for the detective to lift up the shirt and discover the gun[?] I think, under the circumstances here, where it is a very brief period of time where it's in conjunction with a protective sweep where they had information that the defendant may well have been in possession of a weapon and/or drugs that it was unreasonable [sic ] to infer [sic ] the detective to pick up the shirt. [¶] Seems to me what's really happening here ... was a second basis besides officer safety, [and] that is preservation of the evidence. Seems to me the federal courts are now moving to extend the preservation aspect of this. For instance, the gun is not only a safety issue, it is also contraband and also the drugs, if they were there, would have been contraband. I think they're giving the officers more latitude to seize contraband where it's right there where they arrest the person. [¶] ... [¶] It sounds from the description that they did a protective sweep to make sure no one else was around, then, [lo] and behold, there is a gun which they had reason to believe might be there."
*38 An amended information was filed October 11, 2006, adding a felony charge of possession of a firearm with identification numbers removed (§ 12094, subd. (a)), with an allegation that the offense was committed for the benefit of or in association with a criminal street gang (§ 186.22, subd. (d)). On November 30, 2006, defendant pleaded no contest to the section 12090 charge on condition that the remaining counts and gang allegations be dismissed, and that he be placed on probation.

DISCUSSION
Because it violated the Fourth Amendment to the United States Constitution to search defendant's premises without a warrant after he had been removed to a police car, leaving the premises secure, we must reverse the judgment.

I. Facts

The facts relevant to our disposition of defendant's Fourth Amendment claim are these:
The police officers, bearing an arrest warrant for two misdemeanors[2] but no search warrant, demanded that defendant emerge from his house so they could arrest him.
Defendant opened his front door and an officer handcuffed him and further secured him by leading him away from the premises and confining him in a police car in the house's driveway. The officer escorted defendant some 30 to 38 feet from his place of arrest to his place of confinement.
Several police officers searched defendant's "very small residence" and found no one else in it.
Two or three minutes later, with the scene secure, officers' safety assured, and defendant unable to reach or destroy any evidence in the house, a police officer searched the area near the front doorthe site of defendant's arrestand found the handgun under a sweatshirt. The police still lacked a search warrant.

II. Analysis

"In ruling on a motion to suppress [§ 1538.5], the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. [Citation.] The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (People v. Hoyos (2007) 41 Cal.4th 872, 891, 63 Cal.Rptr.3d 1,162 P.3d 528.) On independent review of the ultimate questionthe validity of the state's action under the Fourth Amendment to the United States Constitutionwe conclude that the trial court erred in denying defendant's motion to suppress.[3]
"The Fourth Amendment provides that `[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' `At the very core' of the Fourth Amendment 'stands the right of a man to retreat into *39 his own home and there be free from unreasonable governmental intrusion.' [Citation.] With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." (Kyllo v. United States (2001) 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94.) This case does not present circumstances giving rise to one of the "few exceptions." (Ibid.)
The limited scope of one of the "few exceptions" (Kyllo v. United States, supra, 533 U.S. at p. 31, 121 S.Ct. 2038) to the warrant requirement is set forth in Chimel v. California, supra, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, which outlines the "proper extent" of "the `search incident to arrest' principle." (Id. at p. 762, 89 S.Ct. 2034.) First, to effect the arrest in a safe manner, "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." (Id. at p. 763, 89 S.Ct. 2034.) Second, the police may conduct a "search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." (Ibid.) For the foregoing purposes only, "the area into which an arrestee might reach in order to grab a weapon or evidentiary items"i.e., "the area `within his immediate control'"is "governed by a like rule." (Ibid.)
The handgun found in defendant's home was found in the area that was under his immediate control when he was arrested. The question, though, is whether it was under his immediate control when he was confined in a police car in handcuffs at some distance from the premises. The answer, plainly, is no, and thus the warrantless search was unreasonable under the Fourth Amendment. "`Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.'" (Chambers v. Maroney (1970) 399 U.S. 42, 47, 90 S.Ct. 1975, 26 L.Ed.2d 419.) "[T]he reasons that have been thought sufficient to justify warrantless searches earned out in connection with an arrest no longer obtain when the accused is safely in custody at the station house" (ibid.)nor when the suspect is safely lodged in a police car outside the home.
Arguably a different rule of reasonableness applies when the police have a degree of control over a suspect but do not have control of the entire situation. In such circumstancese.g., in which third parties known to be nearby are unaccounted for, or in which a suspect has not yet been fully secured and retains a degree of ability to overpower the police or destroy evidencethe Fourth Amendment does not bar the police from searching the immediate area of the suspect's arrest as a search incident to an arrest. (People v. Summers (1999) 73 Cal.App.4th 288, 289-291, 86 Cal.Rptr.2d 388.) In Summers, the suspect was only in the process of being removed (id. at p. 290, 86 Cal. Rptr.2d 388), "there was a female present who was not previously known to the officers," (ibid.), and there was "another male roommate somewhere nearby" (ibid.). This case is different. In contrast to Summers, in which the suspect "was still being removed" (id, at p. 291, 86 Cal.Rptr.2d 388), "one roommate was present and free of police control" (ibid.), and "another was unaccounted for" (ibid.), the police here had determined that defendant was the only one on the premises during his arrest and they had safely confined him outside his house and fully secured the scene. Neither he nor anyone else was in a position to jeopardize the officers' safety or destroy evidence. Summers properly stated the general rule, namely that when "there is no threat to the officers because *40 the suspect has been immobilized [and] removed, and no one else is present, it makes no [constitutional] sense that the place he was removed from remains subject to search merely because he was previously there." (Id. at pp. 290-291.) Summers departed from that rule only because the circumstances the case presented were fluid, unstable, and dangerous.
A different rule also applies when the arrestee is found in an automobile. (Thornton v. United States (2004) 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905.) As in the case before us, the suspect in Thornton was handcuffed and placed in a police car before the arresting officer conducted a warrantless search incident to arrest. (Id. at p. 618, 124 S.Ct. 2127.) But the suspect's fate was determined by a bright-line rule that applies to automobile searches rather than the general principles set forth in Chimel v. California, supra, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. What mattered in Thornton was that the suspect was, to the satisfaction of the United States Supreme Court, "next to a vehicle" (541 U.S. at p. 621, 124 S.Ct. 2127; accord, id. at p. 619, 124 S.Ct. 2127) and the vehicle was still within the suspect's "immediate control" (id. at p. 619, 124 S.Ct. 2127; accord, id. at p. 621, 124 S.Ct. 2127) for purposes of applying a bright-line rule announced in New York v. Belton (1981) 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (Belton). In Belton, the court had "held that when a police officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest." (Thornton, at p. 617, 124 S.Ct. 2127.)[4] In sum, Thornton is limited to automobile-involved police action.
For Fourth Amendment purposes, the difference between an automobile and one's private residence is significant. "[S]eizures of automobiles `deal neither with searches nor with the sanctity of private dwellings, ordinarily afforded the most stringent Fourth Amendment protection.'" (City of Indianapolis v. Edmond (2000) 531 U.S. 32, 54, 121 S.Ct. 447, 148 L.Ed.2d 333 (dis. opn. of Rehnquist, C. J.).) Automobiles are mobile and exposed, whereas homes are immobile and relatively unexposed. Even if a suspect has been arrested and taken outside the vehicle (see Thornton v. United States, supra, 541 U.S. at p. 618,124 S.Ct. 2127), the suspect could still fight for control of the vehicle, putting at risk officers' safety and the preservation of evidence. Or the vehicle could be driven off by someone else, towed by a towing company to a remote location and left unguarded, or struck by a passing vehicle, leading to the loss of evidence. For reasons like this, "the officer faces a highly volatile situation." (Id. at p. 621, 124 S.Ct. 2127.) The circumstances accompanying defendant's arrest were diametrically different.
The People rely on U.S. v. Hudson, (9th Cir.1996) 100 F.3d 1409, 1412-1413, 1418-1419, U.S. v. Nohara (9th Cir.1993) 3 F.3d 1239, 1243, U.S. v. Turner (9th Cir.1991) 926 F.2d 883, 888, and People v. Rege (2005) 130 Cal.App.4th 1584, 30 Cal. *41 Rptr.3d 922. All of these cases honor Chimel in the breach, paying homage to Chimel while going beyond what the Fourth Amendment permits under Chimel. (E.g., Hudson, at p. 1419 [stating that a "search may be conducted shortly after the arrestee has been removed from the area" and announcing another constitutionally questionable rule, namely that a warrantless search of the entire room in which the person was arrested is valid]; Nohara, at p. 1243 [tautologically stating that "events between the time of the arrest and search must not render the search unreasonable" and questionably holding that a search is permissible two to three minutes after the arrest with the suspect removed from the room]; Turner, at pp. 886-888 [approving warrantless search of part of room after suspect had been handcuffed and removed, partly on the ground that the Constitution should not be "`entirely at odds with safe and sensible police procedures,'" but showing unease, stating "This holding is limited to the narrow facts of a short time span and the arrestee's close proximity." (Id. at fn. 2.)].)
The reasoning of U.S. v. Turner, supra, 926 F.2d 883, is flawed for reasons pithily and accurately set forth in Justice Scalia's concurring opinion in Thornton v. United States, supra, 541 U.S. at page 627, 124 S.Ct. 2127: "If `sensible police procedures' require that suspects be handcuffed and put in squad cars, then police should handcuff suspects, put them in squad cars, and not conduct the search." Justice Scalia's opinion also disposes of the view in People v. Rege, supra, 130 Cal.App.4th 1584, 30 Cal.Rptr.3d 922, that police must be "remove[d] ... from the horns of a dilemma which would require them either to forego search incident to arrest, or to keep the suspect at least figuratively within arm's reach while conducting such a search, thereby assuring the very danger it was meant to prevent." (Id. at p. 1590, 30 Cal.Rptr.3d 922.) And we are not the first court to decline to rely on U.S. v. Hudson, supra, 100 F.3d 1409. (State v. LaMay, supra, 140 Idaho at p. 840 [103 P.3d at p. 453].)
The fundamental flaw in the analysis contained in the cases we have criticized "is that it assumes that, one way or another, the search must take place. But conducting a Chimel search is not the Government's right; it is an exceptionjustified by necessityto a rule that would otherwise render the search unlawful." (Thornton v. United States, supra, 541 U.S. at p. 627, 124 S.Ct. 2127 (cone. opn. of Scalia, J.).) Agreeing with Justice Scalia, U.S. v. Yanez (S.D.Tex.2007) 490 F.Supp.2d 765, stated: "The twin rationales of Chimel make clear that this doctrine is an exception to the warrant requirement borne of necessityfor the preservation of probative evidence and officer safety." (Id. at p. 776, 89 S.Ct. 2034.)
The People further rely on United States v. Fleming (7th Cir.1982) 677 F.2d 602, 605-608. Like U.S. v. Turner, supra, 926 F.2d at page 888 (which relied on Fleming), Fleming held that it "does not make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures. Thus handcuffing [one of two suspects] and having reinforcements enter [the other suspect's] house should not be determinative, unless we intend to use the Fourth Amendment to impose on police a requirement that the search be absolutely contemporaneous with the arrest, no matter what the peril to themselves or to bystanders." (Fleming, at p. 607, fn. omitted.)
Fleming's reasoning must be understood in the context of the circumstances that case presented. One suspect had been handcuffed and taken out to the street but not far away from the arrest scene. *42 (United States v. Fleming, supra, 677 F.2d at p. 605.) The arrest of both suspects had involved a pursuit and a "scuffle." (Ibid.) Events had unfolded rapidly and the scene was still not entirely secure despite the handcuffing of one suspect and the arrest of the other, whose continued ability to resist Fleming does not discuss (see id. at pp. 605-607). "`Handcuffs are a temporary restraining device; they limit but do not eliminate a person's ability to perform various acts. They obviously do not impair a person's ability to use his legs and feet, whether to walk, run, or kick. Handcuffs do limit a person's ability to use his hands and arms, but the degree of the effectiveness of handcuffs in this role depends on a variety of factors, including the handcuffed person's size, strength, bone and joint structure, flexibility, and tolerance of pain. Albeit difficult, it is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person or within lunge reach, and in so doing to cause injury to his intended victim, to a bystander, or even to himself.'" (U.S. v. Yanez, supra, 490 F.Supp.2d at p. 776.) We agree with Fleming but believe the decision is limited to its facts.
It has been said that the equal protection clause of the Fourteenth Amendment, "lest we lose sight of the forest for the trees, does not require what it barely permits." (Coalition for Economic Equity v. Wilson (9th Cir.1997) 122 F.3d 692, 709.) Similarly, the Fourth Amendment does not force the police to do what it barely allows them to do. The police are required to arrest suspects within the limits legally permitted, and they must do all they can to ensure their safety and the preservation of potential evidence during a lawful arrest. Thereafter, if the police persuade an impartial judge to issue a search warrant, they may search the scene. Only if the situation remains unstable, i.e., police officers must arrest someone but by doing so unavoidably place themselves in personal peril or incur the risk of losing evidence, may the police conduct a warrantless search in the suspect's immediate vicinity during the arrest. (Chambers v. Maroney, supra, 399 U.S. at p. 47, 90 S.Ct. 1975; Chimel v. California, supra, 395 U.S. at p. 763, 89 S.Ct. 2034.) In other words, the law does not invite the police to imperil themselves or risk the loss of evidence simply to avoid the warrant requirement; rather, it tolerates, despite the Fourth Amendment's guarantee against warrantless searches, forgoing the warrant requirement when, during a lawful arrest, circumstances beyond the control of the police urgently require a protective search.
Accordingly, we do not agree with the analysis found in People v. Rege, supra, 130 Cal.App.4th 1584, 30 Cal.Rptr.3d 922; rather, we agree with People v. Summers, supra, 73 Cal.App.4th 288, 86 Cal.Rptr.2d 388. As for the federal circuit decisions we have criticized, we need not follow them (People v. Mejia (2007) 155 Cal. App.4th 86, 99, 65 Cal.Rptr.3d 776) and will not do so.
"The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." (Franks v. Delaware (1978) 438 U.S. 154, 164, 98 S.Ct. 2674, 57 L.Ed.2d 667.) Because the search of defendant's house did not fall within the scope of the exception delineated in Chimel v. California, supra, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, the search violated the Fourth Amendment, and the evidence obtained from it must be excluded in the weighing of defendant's criminal liability.
*43 Inasmuch as we reverse the judgment on the foregoing grounds, we need not address, and do not address, defendant's claim that a probation condition was invalid.

DISPOSITION
The judgment is reversed and the case is remanded to the trial court with directions to permit defendant to withdraw his no-contest plea, to vacate its order denying the motion to suppress, to enter a new order granting the motion to suppress, and for further proceedings in accordance with law.
I CONCUR: McADAMS, J.
BAMATTRE-MANOUKIAN, J., Dissenting.

THE CHIMEL ISSUE
The issue in this case is whether officers must conduct a Chimel[5] search of the area within an arrestee's immediate control for weapons or destructible evidence contemporaneous with the arrest and before removing the arrestee from the exact location of the arrest. As an intermediate state appellate court, we are bound to follow and apply the Fourth Amendment decisions of the United States Supreme Court in a common sense fashion to the facts presented in the case before us. Evidence must be excluded when the search and seizure are unreasonable under the federal Constitution as interpreted by the United States Supreme Court. (In re Tyrell J. (1994) 8 Cal.4th 68, 76, 32 Cal. Rptr.2d 33, 876 P.2d 519, overruled on another point by In re Jaime P. (2006) 40 Cal.4th 128, 139, 51 Cal.Rptr.3d 430, 146 P.3d 965.) Guided by the decisions of our high court and based on the facts of this case, I would find that the search in this case did not violate the Fourth Amendment because it was conducted reasonably contemporaneously with defendant's arrest and it was limited to the area within defendant's immediate control at the time of his arrest. I would further find, based on the facts of this case, that the officers utilized safe and sensible police procedures and were not required to conduct an absolutely contemporaneous search of the area within which the arrestee might gain possession of a weapon or destructible evidence at the time of the arrest. (Chimel, supra, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (Chimel); United States v. Chadwick (1977) 433 U.S. 1, 14-15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (Chadwick); New York v. Belton (1981) 453 U.S. 454, 462-463, 101 S.Ct. 2860, 69 L.Ed.2d 768 (Belton).) Therefore, I would affirm the trial court's denial of defendant's renewed motion to suppress.

THE FACTS
Salinas Police Sergeant David Shaw went to defendant's residence about 4:48 p.m. on August 1, 2005, with four other officers in order to serve two outstanding misdemeanor arrest warrants on defendant. Two officers went to the back of the residence while Shaw and two other officers went to the front. When Officer Schwaner knocked on the front door, they heard a male voice coming from inside the residence ask, "`who's there?'" Officer Schwaner identified himself as a Salinas police officer. No further response came from inside the residence for quite some time, but one of the officers covering the back of the residence heard a male voice coming from inside the back of the residence shortly after the officers knocked on the front door.
*44 The officers continued to knock on the front door and on windows, and to call for defendant to come outside. The officers were aware that defendant's grandmother had reported that defendant "was possibly armed and using drugs." The officers believed the weapon "was supposed to be a firearm." Also, it was reported that defendant "was upset with his daughter, who had told the grandmother that he was a gang member."
After the officers were on the scene for almost 45 minutes, defendant spoke to Officer Schwaner through the closed front door for a few minutes. Defendant finally opened the door and stood in the threshold. Schwaner told defendant to turn around, placed him in handcuffs, and led him out of the house, explaining that they had arrest warrants. Schwaner took defendant to a patrol car "which was up in the driveway, probably 30, 35 feet away from the door or so,"[6] and the two officers covering the back of the house came to the front.
Sergeant Shaw testified: "While Officer Schwaner was securing Mr. Leal in the patrol vehicle, we entered the residence to clear the residence to make sure there was nobody else in it Once we cleared the residence, it's a very small residence, we came back out to the living room. And I searched the area immediately adjacent to where he was standing when he was taken into custody. There was a recliner, a small recliner-type rocking chair next to the front door where he'd been standing. On the chair was a gray sweatshirt. I lifted the sweatshirt. And as soon as I did, I observed a semi-automatic pistol tucked down between the arm of the chair and the cushion." The pistol, which was loaded and had its serial numbers removed, was found about two or three minutes after defendant was arrested. No weapons were found on defendant.
After the trial court denied defendant's motion to suppress (Pen.Code, § 1538.5),[7] which was heard in conjunction with the preliminary examination, defendant was charged by information with obliterating the identification of a firearm (§ 12090? count 1) and actively participating in a criminal street gang (§ 186.22; count 2). The information further alleged that the offense in count 1 was committed for the benefit of or in association with a criminal street gang. (§ 186.22, subd. (b)(1).) Defendant subsequently renewed his motion to suppress and submitted it at a hearing on the transcript of the preliminary examination.

THE TRIAL COURT'S RULING
The trial court denied defendant's renewed motion to suppress, ruling from the bench as follows: "[A]t the time of the preliminary hearing, I think it was clearly established that there was no actual danger for the officers at the time that this search of the chair actually took place, [¶] ... [¶] ... [W]hat the federal courts are trying to do is set out a rule that the officers comprehend and understand the prong test. It has to be within the grabbing area of the arrestee and take place reasonably contemporaneous with the arrest. Unless something is intervened to make the search unreasonable, it seems to me what became unreasonable here [sic ] is because of the protective sweep. [¶] *45 That was helping to establish that no one else was in the residence, was it reasonable at that point for the detective to lift up the shirt and discover the gun. I think, under the circumstances here, where it is a very brief period of time where it's in conjunction with a protective sweep where they had information that the defendant may well have been in possession of a weapon and/or drugs that it was unreasonable to infer [sic] the detective to pick up the shirt. [¶] ... Seems to me the federal courts are now moving to extend the preservation aspect of this. For instance, the gun is not only a safety issue, it is also contraband and also the drugs, if they were there, would have been contraband. I think they're giving the officers more latitude to seize contraband where it's right there where they arrest the person. [¶] ... [H]ad the deputies gone through the whole house searching drawers, that would have been permitted [sic] under this exception for the warrant requirement, but there's no evidence that they did that. [¶] It sounds from the description that they did a protective sweep to make sure no one else was around, then lo[ ] and behold, there is a gun which they had reason to believe might be there. [¶] If the evidence is they had done a search of the whole residence, it might be a different view. If there's some claim on the part of the defendant the gun was somewhere, they found it, that might be a different issue. [¶] Based on that and what I perceive as the rule, I am required to follow at this point. The Court denies the motion."

THE CONTENTIONS
Defendant pleaded no contest to count 1 (obliterating the identification of a firearm, § 12090) and, at sentencing, the court dismissed the remaining charges and allegations on the prosecutor's motion, suspended imposition of sentence, and granted defendant probation for three years with various terms and conditions. Defendant contends on appeal that the search of his residence was not justified under Chimel absent any actual threat to officer safety: "If there is no danger to the officer's safety and no risk of the arrest being frustrated, there is no justification for the search. Chimel sets forth an exception to the general rule that warrants are required for searches, and the exception occurs only when an officer's safety might be endangered."
The Attorney General contends that the trial court properly denied the motion to suppress: "The search at issue was not of the entire residence but rather only of the area adjacent to where [defendant] was arrested. Thus, the police did not conduct an unlawful search of the home but rather a valid search incident to [defendant's] arrest."

THE STANDARD OF REVIEW
"In reviewing the trial court's denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling, deferring to those express or implied findings of fact supported by substantial evidence. [Citations.] We independently review the trial court's application of the law to the facts. [Citation.]" (People v. Jenkins (2000) 22 Cal.4th 900, 969, 95 Cal.Rptr.2d 377, 997 P.2d 1044.) Stated in another way, it is our responsibility as the reviewing court, while deferring to findings of fact, to measure those facts against federal constitutional standards of reasonableness. (People v. Lawler (1973) 9 Cal.3d 156, 160, 107 Cal.Rptr. 13, 507 P.2d 621; People v. Loewen (1983) 35 Cal.3d 117, 123, 196 Cal. Rptr. 846, 672 P.2d 436.)
"A trial judge views the facts of a particular case in light of the distinctive features *46 and events of the community; likewise, a police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference.... The background facts, though rarely the subject of explicit findings, inform the judge's assessment of the historical facts." (Ornelas v. United States (1996) 517 U.S. 690, 699-700, 116 S.Ct. 1657, 134 L.Ed.2d 911.) "An appeals court should give due weight to a trial court's finding that the officer was credible and the inference was reasonable." (Id. at p. 700, 116 S.Ct. 1657.) Therefore, determining whether the trial court properly denied a motion to suppress is a "common sense decision" (Illinois v. Gates (1983) 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527) which turns on the "practical considerations of everyday life." (Brinegar v. United States (1949) 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879.)

THE FOURTH AMENDMENT
"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that `searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendmentsubject only to a few specifically established and well-delineated exceptions.'" (Mincey v. Arizona (1978) 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290, quoting Katz v. United States (1967) 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576.) "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." (Maryland v. Buie (1990) 494 U.S. 325, 337, 110 S.Ct. 1093, 108 L.Ed.2d 276.) The Fourth Amendment also permits a search incident to a lawful arrest. (Preston v. United States (1964) 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (Preston); Chimel, supra, 395 U.S. at pp. 762-763, 768, 89 S.Ct. 2034.) "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search...." (United States v. Robinson (1973) 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427.)

THE LAW
The majority has concluded that the search conducted following defendant's arrest violated the Fourth Amendment because the search was not conducted contemporaneous with the arrest before removing defendant from the exact location of the arrest. Although the warrantless search was reasonably contemporaneous with defendant's arrest, and the handgun was found in the area that was under defendant's immediate control when he was arrested, the majority finds that the search was unreasonable and holds that, "[o]nly if the situation remains unstable, i.e., police officers must arrest someone but by doing so unavoidably place themselves in personal peril or incur the risk of losing evidence, may the police conduct a warrantless search in the arrestee's immediate vicinity during the arrest." (See, maj. opn., ante, at p. 42.) In reaching this conclusion, the majority rejects federal and California appellate court cases that have applied Chimel and other United States Supreme Court decisions to similar searches and have found such searches to be reasonable. I respectfully disagree with the majority *47 opinion. I begin my analysis with a brief review of relevant precedent.
In Chimel, a case decided in 1969, officers went to the defendant's home with a warrant for his arrest. The defendant's wife let the officers inside, where they waited for the defendant to return home from work. When the defendant entered his home, an officer handed him the arrest warrant and asked for permission to "`look around.'" (Chimel, supra, 395 U.S. at p. 753, 89 S.Ct. 2034.) The defendant objected, but the officers nevertheless conducted a search through the entire house, garage, and workshop. After completing the search, which took between 45 minutes and an hour, the officers seized numerous items. (Id. at pp. 753-754, 89 S.Ct. 2034.) The defendant contended during his trial and on appeal that the items taken from his house were admitted into evidence against him over his objection, and that they had been unconstitutionally seized. (Id. at p. 754, 89 S.Ct. 2034.) The question before the United States Supreme Court was whether the warrantless search of the defendant's entire house could be constitutionally justified as incident to the defendant's arrest. (Id. at p. 755, 89 S.Ct. 2034.) The court determined that the scope of the search was unreasonable under the Fourth and Fourteenth Amendments. (Id. at p. 768, 89 S.Ct. 2034.)
"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area `within his immediate control'construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (Chimel, supra, 395 U.S. at pp. 762-763, 89 S.Ct. 2034; italics added.) "The search here went far beyond the [defendant's] person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him. There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area." (Id. at p. 768, 89 S.Ct. 2034.)
In Chambers v. Maroney (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (Chambers), the question before the court was the admissibility of evidence seized from a car, in which the defendant was riding at the time of his arrest, after the car was taken to a police station and was thoroughly searched there without a warrant. (Id. at p. 43, 90 S.Ct. 1975.) The court found that the search could not be justified as a search incident to the defendant's arrest. (Id. at p. 47, 90 S.Ct. 1975.) "`Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.'" (Ibid., quoting Preston, supra, 376 U.S. at p. 367, 84 S.Ct. 881.) "[T]he reasons that have been thought sufficient to justify warrantless searches carried out in connection with an arrest no longer obtain when the accused is safely in custody at the station house." (Chambers, supra, 399 U.S. at p. 47, 90 S.Ct. 1975.) Nevertheless, the court found the search *48 reasonable because there was probable cause to search the car at the time it was stopped and "[t]he probable-cause factor still obtained at the station house." (Id. at p. 52, 90 S.Ct. 1975.)
In Chadwick, a case decided in 1977, the government contended that the search of a footlocker was reasonable because the footlocker was seized contemporaneously with the defendants' arrests and was searched as soon thereafter as was practicable. (Chadwick, supra, 433 U.S. at p. 14, 97 S.Ct. 2476.) Because the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after the defendants were securely in custody, the court found that the search could not be viewed as incident to the defendants' arrests. (Id. at p. 15, 97 S.Ct. 2476.) "Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests make warrantless searches of items within the `immediate control' area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. [Citations.] However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the `search is remote in time or place from the arrest,' [citation], or no exigency exists." (Chadwick, supra, 433 U.S. at pp. 14-15, 97 S.Ct. 2476.)
Following Chimel and Chadwick, the United States Supreme Court in Belton, supra, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, upheld as reasonable the search of a defendant's jacket located inside the passenger compartment of the car in which he had been a passenger. At the time of the search of the passenger compartment, the defendant and three other men had already been ordered out of the car, arrested, pat searched for weapons, split up, and searched again. (Id. at pp. 455-456, 101 S.Ct. 2860.) The court stated: "The search of the [defendant's] jacket followed immediately upon [his] arrest.... The jacket was thus within the area which we have concluded was `within the arrestee's immediate control' within the meaning of the Chimel case. The search of the jacket, therefore, was a search incident to a lawful custodial arrest, and it did not violate the Fourth and Fourteenth Amendments." (Belton, supra, at pp. 462-463, 101 S.Ct. 2860, fn. omitted.)
"The Court's opinion in Chimel emphasized the principle that, as the Court had said in Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889, `[t]he scope of [a] search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible.' Quoted in Chimel v. California, supra, at 762, 89 S.Ct. 2034. Thus while the Court in Chimel found `ample justification' for a search of `the areas from within which [an arrestee] might gain possession of a weapon or destructible evidence,' the Court found `no comparable justification ... for routinely searching any room other than that in which an arrest occursor, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself.' 395 U.S., at 763, 89 S.Ct. 2034." (Belton, supra, 453 U.S. at pp. 457-458,101 S.Ct. 2860.)
As the Supreme Court based the Belton decision squarely on the legality of searches incident to arrest, its holding is not limited to automobile searches. (See, Belton, supra, 453 U.S. at p. 460, fn. 3, 101 S.Ct. 2860 ["Our holding today does no more than determine the meaning of Chimel's principles in this particular and problematic *49 context. It in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests."]; see also Thornton v. United States (2004) 541 U.S. 615, 620-623, 124 S.Ct. 2127, 158 L.Ed.2d 905 [search of passenger compartment of vehicle incident to a lawful custodial arrest reasonable even when driver is arrested outside, but next to, the vehicle].) In fact, the Belton court specifically stated that there was no need for it to consider "whether the search and seizure were permissible under the so-called 'automobile exception'" articulated in Chambers. (Belton, supra, 453 U.S. at pp. 462-463, fn. 6, 101 S.Ct. 2860.)
Several federal and California appellate courts have applied Chimel and its progeny to searches conducted in situations similar to the one before us and have concluded that these searches were reasonable under the Fourth Amendment. In United States v. Fleming (7th Cir.1982) 677 F.2d 602 (Fleming), one defendant was arrested as he was approaching the front door of the second defendant's home. The first defendant had a bag in his hand at the time of his arrest, but dropped it. An officer picked it up, but did not open it until five minutes later, after the defendant had been taken to the street and handcuffed. The bag contained $10,000. The second defendant also had a bag in his hand at the time of his arrest. It, too, fell to the floor. One of the officers who went inside the home to make the arrest picked up the bag, immediately opened it in that defendant's presence, and saw cocaine. (Id. at pp. 605-606.) The defendants contended on appeal that, "because the danger addressed by a Chimel search had dissipated, so had any justification for opening the bags without a search warrant." (Id. at p. 606.) The appellate court disagreed. "Precedent of the Supreme Court and this Circuit suggests that the right to conduct a Chimel search is not so evanescent." (Ibid.)
"[A] reviewing court, charged with the task of evaluating a Chimel search, must first put itself in the position of the law enforcement officers who initiated it.... Only after we have engaged in the same ex ante calculations that the police themselves faced should we consider whether subsequent events made a Chimel search unreasonable. At this second level of inquiry it does not make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures. Thus handcuffing [one defendant] and having reinforcements enter [the] house should not be determinative, unless we intend to use the Fourth Amendment to impose on police a requirement that the search be absolutely contemporaneous with the arrest, no matter what the peril to themselves or to bystanders. It is surely possible for a Chimel search to be undertaken too long after the arrest and too far from the arrestee's person. That is the lesson of Chadwick, But we do not consider that the presence of more officers than suspects invalidated the immediate search of [the second defendant's] bag. Nor do we think that a five-minute delay between seizing [the first defendant's] bag and opening it, occasioned by [the officer's] handcuffing [that defendant] and moving him to the street, defeased [the officer's] right to search under Chimel principles." (Fleming, supra, 677 F.2d at pp. 607-608, fns. omitted.)
In United States v. Palumbo (8th Cir. 1984) 735 F.2d 1095, the defendant and a cohort were arrested in the defendant's hotel room after he gave a cocaine sample to a buyer, who was cooperating with government agents and who was wearing a device that transmitted their conversations, so that the buyer and the cohort could inspect the sample in another room *50 and return with the. purchase price. After learning from the buyer where the defendant hid his cocaine, the officers retrieved it from behind a dresser drawer. (Id. at p. 1096.) The defendant contended that the warrantless search of his hotel room was not justified as a search incident to his arrest as the cocaine was inaccessible to him because he was handcuffed and in the presence of several officers. (Id. at p. 1097.) The appellate court disagreed. "[Accessibility, as a practical matter, is not the benchmark. The question is whether the cocaine was in the area within the immediate control of the. arrestee within the meaning of Chimel.... This rule defines the area generally which may be searched, and is not constrained because the arrestee is unlikely at the time of the arrest to actually reach into that area. See New York v. Belton, 453 U.S. 454, 459-60, 101 S.Ct. 2860, 69 L.Ed.2d 768, ..." (Palumbo, supra, 735 F.2d at p. 1097.)
In United State v. Turner (9th Cir.1991) 926 F.2d 883 (Turner), the defendant was arrested in bed pursuant to an arrest warrant. A handgun lay beside him beneath the sheets. The officers handcuffed him and took him to another room. They then found baggies of cocaine base under his pillow. (Id. at pp. 886.) The appellate court was asked to determine "whether searches incident to arrest may ever encompass a room from which the arrestee has been removed." (Id. at p. 887.) Citing Chimel, Fleming, and United States v. Andersson (9th Cir.1987) 813 F.2d 1450 (Andersson), the court upheld the search. "[Andersson ] permitted a search incident to arrest in a hotel room to encompass the whole room and a closed suitcase." (Turner, supra, 926 F.2d at p. 887.) "[Fleming ] held that a search incident to arrest was valid even though it was conducted five minutes after the arrest, while the arrestee was handcuffed." (Turner, supra, at p. 887.) "We adopt the Seventh Circuit's approach [in Fleming]. First, we consider whether the baggies of cocaine base were within Turner's immediate control when he was arrested. He was on the bed with the baggies when he was arrested. [¶] Next we consider whether subsequent events made the search unreasonable. The officers handcuffed Turner and took him into the next room out of a concern for safety. We cannot say that these concerns were unfounded, for they had already discovered a concealed weapon beneath the bedding. They did not take him far away or delay for long before conducting the search. Under the circumstances, we cannot find the search that revealed the baggies of cocaine inconsistent with Chimel or Andersson. The baggies were validly seized during a search incident to arrest." (Turner, supra, at p. 888.)
In United States v. Nohara (9th Cir. 1993) 3 F.3d 1239 (Nohara), the defendant was holding a black bag and a glass pipe with white residue when he was arrested at the front door of his apartment. Officers took the items from the defendant and seated him on a chair in the hall. Within two to three minutes from when the defendant opened the door, an officer stood a few feet from him, searched the black bag, and found methamphetamine. (Id. at pp. 1240-1241.) Citing Chimel and Turner, the appellate court upheld the search. "An officer may make a `search incident to arrest' of the area within the arrestee's immediate control to look for weapons or destructible evidence." (Nohara, supra, 3 F.3d at p. 1243.) "Nohara was holding the black bag as he opened the door. The black bag was both under his control and likely to contain destructible evidence." (Ibid.) "Likewise, the officers here did not make the search unreasonable by handcuffing Nohara, seating him in the hallway, and searching the *51 black bag within two to three minutes of his arrest." (Ibid.)
In United States v. Hudson (9th Cir. 1996) 100 F.3d 1409 (Hudson), the defendant was arrested in his bedroom pursuant to an arrest warrant. The officers ordered him out of the room, handcuffed him, removed him from the house, and continued their sweep of the house. After the sweep was completed about three minutes after the arrest, one of the officers returned to the defendant's room to conduct a search incident to the arrest. On the floor where the defendant had been standing was a rifle case. The officer opened the case and found a rifle. (Id. at p. 1413.) The defendant contended, inter alia, "that the search exceeded the scope of a proper `search incident to arrest.'" (Id. at p. 1418.) The appellate court disagreed, citing Turner, Andersson, and Fleming.
"Since the Supreme Court's decision in Chimel, several legal rules have emerged to govern the `search incident to arrest.' Some of those principles have application to this case. [¶] Concerning the temporal scope of the search, we have held that a `search incident to arrest' must be conducted `at "about the same time as the arrest."' [Citations.] That search may be conducted shortly after the arrestee has been removed from the area, provided that (1) the search is restricted to the area that was `within the arrestee's immediate control when he was arrested,' [citation], and (2) events occurring after the arrest but before the search incident to arrest did not render the search unreasonable. [Citation.]" (Hudson, supra, 100 F.3d at p. 1419.) "With respect to the physical scope of the search, we have held that a search incident to arrest may `encompass a room from which the arrestee has been removed.' [Citation.] We have also held that a search incident to arrest may justify the opening of containers found within the physical area covered by the search. [Citations.]" (Ibid., fn. omitted.) "With these principles in mind we consider ... evidence Hudson sought to suppress below. [¶] We begin by noting that little time passed between the moment Hudson was arrested and the time the officer returned to his bedroom to conduct the search.... The record indicates that a mere three minutes elapsed between Hudson's arrest and the search of the rifle case. [Citations.] [¶] We next consider the physical circumstances of the search.... Although the rifle was contained in a case, it was nevertheless well within Hudson's reach, and thus constituted a potential danger to the arresting officers. The physical proximity of the rifle thus supports a conclusion that the search fell squarely within the spatial limitations of a search incident to arrest." (Id. at p. 1420.)
In People v. Summers (1999) 73 Cal. App.4th 288, 86 Cal.Rptr.2d 388 (Summers), the defendant was asleep in his bed in a small trailer when two officers arrived to serve him with a search warrant. The officers were escorted into the trailer by one of the defendant's two roommates. They awakened the defendant and told him that they had a warrant for his arrest. One officer handcuffed the defendant and escorted him out while the other officer kept an eye on the roommate who was present and an eye out for the roommate who was not, searched defendant's bed, and found a sawed-off shotgun between the mattress and the headboard. The shotgun was not seized until about 10 minutes later, after the officers were satisfied that the defendant was not armed and their safety had been assured. (Id. at pp. 289-290, 86 Cal.Rptr.2d 388.) The appellate court upheld the search and seizure as incident to the defendant's arrest. "This is a simple Chimel ... case to our way of thinking. When discovered, the gun was *52 within the immediate area of the still-being-removed arrestee, there was a female present who was not previously known to the officers, and there was another male roommate somewhere nearby whose presence away, from the immediate premises had not yet been confirmed." (Summers, supra, 73 Cal.App.4th at p. 290, 86 Cal. Rptr.2d 388.)
"The justification for Chimel searches is officer safety, not officer opportunism, i.e., a postarrest license to embark on a general search. [Citation.] That is to say, where there is no threat to the officers because the suspect has been immobilized, removed, and no one else is present, it makes no sense that the place he was removed from remains subject to search merely because he was previously there. [¶] That said though, we hasten to add this: This was not a cold arrest scene with a long-gone suspect. He was still being removed from the cramped premises; one roommate was present and free of police control, and another was unaccounted for when the weapon was chanced upon. This was a fluid situation in close quarters; and a court could properly find, as we do, that the circumstances justified reasonable precautions for the safety of everyone involved.... [T]he search that turned up this weapon would have been upheld in virtually all jurisdictions. [Citation.]. The warrantless seizure of the weapon a few minutes later while the premises were still under the lawful control of the officers was similarly lawful." (Summers, supra, 73 Cal.App.4th p. 291, 86 Cal.Rptr.2d 388, fn. omitted.) "The officers acted in a perfectly reasonable manner here." (Id. at p. 291, fn. 2, 86 Cal.Rptr.2d 388.)
In People v. Rege (2005) 130 Cal.App.4th 1584, 30 Cal.Rptr.3d 922 (Rege), the defendant was arrested pursuant to an arrest warrant just inside the door of her motel room. She was handcuffed and made to lie on the floor of the room at the foot of the bed while her 11-year-old daughter was crying beside it. The officers found drugs and drug paraphernalia in a black pouch under the bed about three feet from the defendant, and scales in the nightstand next to the bed. The trial court granted the defendant's motion to suppress the scales, but denied the motion to suppress the other items. (Id. at pp. 1586-1587, 30 Cal.Rptr.3d 922.) After discussing Chimel, Belton, and Summers, the appellate court found that the search was reasonable. "[Considering Chimel and Belton together, it is clear that a valid search incident to arrest may take place even after the suspect has been arrested or immobilized." (Rege, supra, 130 Cal. App.4th at p. 1589, 30 Cal.Rptr.3d 922.) "`[T]he "grabbing area" described by Chimel applies to the area immediately accessible to the suspect at the time of his arrest, and ... a search of the area may be made subsequent to the arrest, so long as it is reasonably contemporaneous and nothing has occurred in the meantime to render it unreasonable. This removes police from the horns of a dilemma which would require them either to forego search incident to arrest, or to keep the suspect at least figuratively within arm's reach while conducting such a search, thereby assuring the very danger it was meant to prevent' [Citation.]" (Rege, supra, 130 Cal. App.4th at p. 1590, 30 Cal.Rptr.3d 922, italics added, quoting Summers, supra, 73 Cal.App.4th at p. 295, 86 Cal.Rptr.2d 388 (cone. opn. of Bedsworth, J.).)[8] "Here, the search was conducted within the area into which defendant could have reached at *53 the time of her arrest. The search was reasonably contemporaneous with the arrest, and no subsequent events had rendered such a search unreasonable. Thus, the trial court did not err in denying the motion to suppress." (Id. at p. 1590, 30 Cal.Rptr.3d 922.)

THE CHIMEL SEARCH WAS REASONABLE
With this precedent in mind, I now turn to the facts of this case. In the case before us, defendant does not contest the validity of the warrants for his arrest. When the officers went to defendant's residence with the arrest warrants, they were aware that defendant "was possibly armed and using drugs," and they believed the weapon was a "firearm." Three officers knocked on the front door and announced their presence, but heard nothing further from inside the house after one initial response. Officers at the back of the house also heard a male voice coming from inside the back of the house shortly after the officers at the front first knocked on the front door. When defendant finally opened the front door after 45 minutes and stood in the threshold, he had access to a recliner, which was about one foot away from him when he was arrested. Thus, at the time of defendant's arrest, the recliner was "`within the arrestee's immediate control' within the meaning of the Chimel case." (Belton, supra, 453 U.S. at p. 463, 101 S.Ct. 2860.)
The officers' later search of the recliner "[did] not stray beyond the area within the immediate control of the arrestee" as established by Chimel. (Belton, supra, at p. 460, 101 S.Ct. 2860.) The search was conducted within the area into which defendant could have reached at the time of his arrest for a weapon or destructible evidence, the search was reasonably contemporaneous with defendant's arrest as it occurred within two to three minutes of the arrest, and no subsequent events had rendered the search unreasonable. (Rege, supra, 130 Cal.App.4th at p. 1590, 30 Cal. Rptr.3d 922; Turner, supra, 926 F.2d at p. 888; Nohara, supra, 3 F.3d at p. 1243, Hudson, supra, 100 F.3d at p. 1420.) The recliner was not personal property that the officers had seized at the time of the arrest and reduced to their exclusive control. (Chadwick, supra, 433 U.S. at pp. 14-15, 97 S.Ct. 2476.) Although defendant was in the patrol car at the time of the search, the distance between the defendant and the recliner at the moment the search was initiated is not dispositive, nor is the fact that the defendant was handcuffed and immobilized. (Summers, supra, 73 Cal. App.4th at pp. 290-291, 86 Cal.Rptr.2d 388; Rege, supra, 130 Cal.App.4th at pp. 1589-1590, 30 Cal.Rptr.3d 922, Turner, supra, 926 F.2d at p. 888; Nohara, supra, 3 F.3d at p. 1243; Hudson, supra, 100 F.3d at p. 1420.)
The officers acted reasonably and out of concern for their safety when they handcuffed and moved defendant and then delayed the search for two to three minutes in order to do a protective sweep of the residence. The officers were aware that defendant was reportedly possibly armed with a firearm and using drugs, they did not take defendant far away, and they did not unreasonably delay before conducting the search. (Preston, supra, 376 U.S. at p. 367, 84 S.Ct. 881; Chambers, supra, 399 U.S. at p. 47, 90 S.Ct. 1975; Fleming, supra, 677 F.2d. at pp. 607-608; Turner, supra, 926 F.2d at p. 888.) The loaded pistol was found in the recliner about two or three minutes after defendant was arrested and while defendant was still at the scene of the arrest. (Turner, supra, 926 F.2d at p, 888; Nohara, supra, 3 F.3d at p. 1243; Hudson, supra, 100 F.3d at p. 1420.) The officers were not required "either to *54 forego search incident to arrest, or to keep [defendant] at least figuratively within arm's reach [of the recliner ] while conducting ... a search" of it. (Summers, supra, 73 Cal.App.4th at p. 295, 86 Cal. Rptr.2d 388 (cone. opn. of Bedsworth, J.), italics added; Rege, supra, at p. 1590, 30 Cal.Rptr.3d 922.) To keep defendant at the exact location of the arrest while conducting an absolutely contemporaneous Chimel search would assure the very danger the search was meant to prevent.
If the officers had searched the recliner after defendant had been arrested and was still standing in the threshold, then there is no question that the search would have been reasonable. The recliner was within the area that was within defendant's immediate control at the time of his arrest. (Chimel, supra, 395 U.S. at pp. 762-763, 89 S.Ct. 2034.) If the officers had searched the recliner two to three minutes after handcuffing and removing defendant from the threshold, but had seated him nearby without conducting a protective sweep, or had seated him nearby and searched while conducting a protective sweep, then the search would also have been reasonable. (Palumbo, supra, 735 F.2d at pp. 1096-1097; Turner, supra, 926 F.2d at pp. 887-888; Nohara, supra, 3 F.3d at p. 1243; Hudson, supra, 100 F.3d at pp. 1419-1420.)
Guided by United States Supreme Court precedent and federal and state appellate court cases following it, I would find that the officers in this case were not required to conduct the Chimel search absolutely contemporaneously with the arrest while defendant was detained in the exact location of the arrest. Further, I would find that the officers were not required to forego a protective sweep, nor were they required to conduct the Chimel search contemporaneously with the protective sweep. Here, the officers used common sense and employed "safe and sensible police procedures" (Fleming, supra, 677 F.2d at p. 607) when they searched the recliner two to three minutes after handcuffing and removing defendant 30 to 35 feet away and after conducting a protective sweep for officer safety reasons. Here, there is nothing to suggest any improper police motive in conducting the Chimel search and the officers did not search the entire residence, but limited their search to the area into which defendant might have reached in order to grab a weapon or evidentiary items. (Chimel, supra, 395 U.S. at pp. 762-763, 89 S.Ct. 2034.) Therefore, the search was reasonable as it was reasonably contemporaneous with defendant's arrest and was limited to the area within defendant's immediate control at the time of his arrest. (Ibid.) Accordingly, I would conclude, based on legal precedent and the facts of this case, that the warrantless Chimel search of the recliner and the seizure of the loaded pistol incident to defendant's arrest were reasonable and based on common sense and did not violate the Fourth Amendment. I would affirm the trial court's denial of defendant's renewed motion to suppress.
NOTES
[1] All further statutory references are to the Penal Code.
[2] The parties do not describe the misdemeanors on which the arrest warrants were based, and we have not seen the offenses described in the record. There is no reason to believe that the misdemeanors were gun-related.
[3] California law follows Fourth Amendment standards. (People v. Robles (2000) 23 Cal.4th 789, 794, 97 Cal.Rptr.2d 914, 3 P.3d 311.)
[4] Belton applied the Fourth Amendment principles described in Chimel to "this particular and problematic content" (Belton, supra, 453 U.S. at p. 460, fn. 3, 101 S.Ct. 2860), meaning automobile-involved arrests and contemporaneous searches, and did not alter "the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests." (Ibid.) "Although some federal courts have chosen to apply Belton to all searches incident to arrest, Idaho has specifically rejected this extension" (State v. LaMay (2004) 140 Idaho 835, 838 [103 P.3d 448, 451]), and so do we.
[5] Chimel v. California (1969) 395 U.S. 752, 762-763, 89 S.Ct. 2034, 23 L.Ed.2d 685.
[6] The court asked Sergeant Shaw if there was anything in the courtroom that appeared to be about the same distance away. Shaw responded, "maybe to the doors or slightly past the doors." The court stated: "For the record, from the witness stand to the first set of large doors going out of the courtroom is 38 feet."
[7] All further statutory references are to the Penal Code.
[8] In his concurring opinion in Summers, Justice Bedsworth stated: "Turner and Hudson represent the proper application of Chimel to our facts." (Summers, supra, 73 Cal.App.4th at p. 297, 86 Cal.Rptr.2d 388.)