[No. E036180. Fourth Dist., Div. Two. July 15, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
ALISON JUNE REGE, Defendant and Appellant.

COUNSEL

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Scott C. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**HOLLENHORST, Acting P. J.—**

## INTRODUCTION

Following the trial court's partial denial of her motion to suppress evidence (Pen. Code, § 1538.5), defendant Alison June Rege entered a plea of guilty to one count of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). Defendant now challenges the partial denial of her motion to suppress. We find no error, and we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On June 25, 2003, John Roe, a deputy with the San Bernardino County Sheriff's Department, received information from a citizen informant that a woman named Alison was selling methamphetamine from a motel room in Victorville. The informant provided a description of Alison and stated that she drove a brown Honda Accord.

Roe went to the motel where he saw a brown Honda in the parking lot. His license check on the Honda showed that it was registered to defendant, and he learned that defendant had an outstanding warrant for her arrest. The motel manager told Roe that defendant was staying in room 220 at the motel, and the manager gave Roe a master key.

Roe and other officers repeatedly knocked on the door, identified themselves as deputy sheriffs, told defendant they had a warrant for her arrest, and demanded that she open the door. Defendant said that she would open the door as soon as she got dressed, but later she failed to respond. The motel manager went into the adjacent room and told defendant that they had a warrant for her arrest. Defendant responded that she did not believe they had a warrant, and they needed a search warrant to enter the room.

Sergeant Higgins told defendant he would force entry if she did not open the door. Defendant again refused to open the door, and the officers used a battering ram to enter the room about 20 minutes after Roe's initial contact with defendant and after the officers had demanded entry about 20 times.

When the officers entered the room, defendant was standing just inside the door. Defendant was ordered to lie on the floor, and she was handcuffed. Defendant's 11-year-old daughter was crying in the corner of the room beside the bed. The motel room was about 12 feet by 15 feet with a small attached bathroom. The room had one bed in the middle.

Roe saw that the bathroom window was open, which led him to believe that a weapon or other object had been thrown out the window. After the room was secured, Roe searched the area below the window and found portions of a broken glass pipe and a glass vial containing suspected methamphetamine.

Roe returned to the room where defendant was lying on the floor at the foot of the bed. Another officer lifted the mattress, and Roe located a black pouch under the bed about three feet from defendant. The pouch contained scales, packaging materials, drug paraphernalia, and about half an ounce of a substance suspected to be methamphetamine. The substance found in the pouch was later determined to be 14.43 grams of a crystalline material containing methamphetamine and 1.52 grams of a vegetable material containing marijuana. According to Roe, the methamphetamine was a usable amount and an amount consistent with possession for the purpose of sale.

Roe found another set of scales in a nightstand next to the bed. Defendant told Roe that she used methamphetamine, and she used the scales to weigh her purchases to make sure she was buying the correct amount.

Defendant moved to suppress the evidence found in her motel room. The trial court granted the motion to suppress as to the scales found inside the nightstand but denied the motion with respect to all other items. The court stated, "[T]he law is, I believe, that they can search incident to the arrest area within her immediate control, arm's length essentially, where people might have placed a weapon, contraband, et cetera. [¶] From the evidence I heard, it appears the bag was within that zone. However, the nightstand appears to me to probably be outside that zone. And just because you have a warrant to arrest someone, it's not a search warrant. The search has to be within an immediate area, generally described as within arm's length."

Defendant thereafter entered a plea of guilty to possession of methamphetamine.

## DISCUSSION

### A. *Standard of Review*

 Under the Truth-in-Evidence provision of Proposition 8 (Cal. Const., art. I, § 28, subd. (d)), federal constitutional standards govern review of issues related to the suppression of evidence seized by the police. (*People v. Lenart* (2004) 32 Cal.4th 1107, 1118 [12 Cal.Rptr.3d 592, 88 P.3d 498].) Thus, "[w]hen the admissibility of evidence is challenged as being the 'fruit' of an unlawful search and seizure, article I, section 28, subdivision (d) of the California Constitution requires [California courts] to follow the decisions of the United States Supreme Court." (*People v. Bennett* (1998) 17 Cal.4th 373, 390 [70 Cal.Rptr.2d 850, 949 P.2d 947], citing *People v. Souza* (1994) 9 Cal.4th 224, 232 [36 Cal.Rptr.2d 569, 885 P.2d 982], and *In re Lance W.* (1985) 37 Cal.3d 873, 885–890 [210 Cal.Rptr. 631, 694 P.2d 744].)

 In reviewing a trial court's ruling on a motion to suppress evidence we defer to the court's express or implied factual findings if they are supported by substantial evidence. (*People v. Ayala* (2000) 23 Cal.4th 225, 255 [96 Cal.Rptr.2d 682, 1 P.3d 3].) We then exercise our independent judgment to determine whether, on the facts found, the search was "reasonable" under the Fourth Amendment. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].)

### B. *The Search Was Reasonable Under Federal Constitutional Standards*

 In *Chimel v. California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], the court held that a warrantless search of an arrestee incident to a lawful custodial arrest extended to the area " 'within his immediate control' [i.e.,] the area from within which he might gain possession of a weapon or destructible evidence." (*Id.* at p. 763 [89 S.Ct. at p. 2040].)

In *New York v. Belton* (1981) 453 U.S. 454, 458 [69 L.Ed.2d 768, 101 S.Ct. 2860, 2863] (*Belton*), the court explained the purpose underlying *Chimel* as follows: "Although the principle that limits a search incident to a lawful custodial arrest may be stated clearly enough, courts have discovered the principle difficult to apply in specific cases. Yet, as one commentator has

pointed out, the protection of the Fourth and Fourteenth Amendments 'can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement.' [Citation.] This is because 'Fourth Amendment doctrine, given force and effect by the exclusionary rule, is primarily intended to regulate the police in their day-to-day activities and thus ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged. A highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be "literally impossible of application by the officer in the field." ' [Citation.] [¶] In short, '[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' [Citation.]"

In *Belton*, the court expanded the *Chimel* rule in the context of an automobile search incident to arrest. In *Belton*, the challenged search of a jacket occurred after all the occupants of the car had been removed and arrested. (*Belton, supra,* 453 U.S. at p. 456.) The court held that because the jacket had been "within the area which we have concluded was 'within the arrestee's immediate control' within the meaning of the *Chimel* case," the search "was a search incident to a lawful custodial arrest, and it did not violate the Fourth and Fourteenth Amendments." (*Id.* at pp. 462–463, fn. omitted.) Thus, considering *Chimel* and *Belton* together, it is clear that a valid search incident to arrest may take place even after the suspect has been arrested or immobilized.

In *People v. Summers* (1999) 73 Cal.App.4th 288 [86 Cal.Rptr.2d 388] (*Summers*), however, the majority opinion, in our view, departed from these principles, at least in dicta. Although affirming the seizure of a sawed-off shotgun from a bed about 10 feet away from the defendant, and 10 minutes after his arrest, the court stated that "where there is no threat to the officers because the suspect has been immobilized, removed, and no one else is present, it makes no sense that the place he was removed from remains subject to search merely because he was previously there." (*Id.* at pp. 290–291.)

In a concurring opinion, Justice Bedsworth stated the proper focus should be on the area into which the defendant could have grabbed at the time of his arrest, not the area that was under his immediate control at the time of the search. (*Summers, supra,* 73 Cal.App.4th at p. 293.) We agree with Justice Bedsworth's thoughtful analysis of the issue. That analysis, in our view, properly focuses on commonsense considerations that "recognize the exigencies of effective and safe law enforcement without eviscerating the protection of the citizenry." (*Id.* at p. 294, fn. 1.)

Thus, "[f]ollowing the lead of the Supreme Court, the federal circuits have recognized the folly of promulgating a rule designed to enable the police to protect themselves and interpreting it to require them to put themselves at risk in order to take advantage of it. Phrased less circuitously, it makes no sense to condition a search incident to arrest upon the willingness of police to remain in harm's way while conducting it. [¶] Therefore the courts have refined a rule which protects the individual from unreasonable search and the officer from unreasonable danger. They have provided that the 'grabbing area' described by *Chimel* applies to the area immediately accessible to the suspect *at the time of his arrest*, and that a search of the area may be made subsequent to the arrest, so long as it is reasonably contemporaneous and nothing has occurred in the meantime to render it unreasonable. This removes police from the horns of a dilemma which would require them either to forego search incident to arrest, or to keep the suspect at least figuratively within arm's reach while conducting such a search, thereby assuring the very danger it was meant to prevent." (*Summers, supra,* 73 Cal.App.4th at p. 295.)

In our view, the dicta to the contrary in *Summers* and the opinions of the federal courts on which the minority relies represent an unwarranted departure from the letter and the spirit of *Chimel* and *Belton*.

Here, the search was conducted within the area into which defendant could have reached at the time of her arrest. The search was reasonably contemporaneous with the arrest, and no subsequent events had rendered such a search unreasonable. Thus, the trial court did not err in denying the motion to suppress.

## DISPOSITION

The judgment is affirmed.

McKinster, J., concurred.

**GAUT, J., Dissenting.**—I dissent. I agree with the majority opinion that federal constitutional standards, as expressed in *Chimel v. California* (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 89 S.Ct. 2034], govern appellate review of search and seizure issues. Furthermore, I agree a deferential standard of review applies to the trial court's ruling on a motion to suppress evidence. (*People v. Ayala* (2000) 23 Cal.4th 225, 255 [96 Cal.Rptr.2d 682, 1 P.3d 3].) I depart from the majority holding to the extent it concludes substantial evidence supports the trial court's ruling denying defendant's motion to suppress the evidence seized from under the motel mattress on the grounds it was within her immediate control at the time of her arrest.

The Fourth Amendment bars the admission of evidence seized during an unlawful search. A search is limited in scope to the area within the suspect's " 'immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (*Chimel v. California, supra,* 395 U.S. at pp. 762–763.) In deciding "whether a warrantless search incident to an arrest exceeded constitutional bounds, a court must ask: was the area in question, at the time it was searched, conceivably accessible to the arrestee—assuming that he was neither 'an acrobat [nor] a Houdini'?" (*United States v. Lyons* (D.C. Cir. 1983) 227 U.S. App. D.C. 284 [706 F.2d 321, 330], fn. omitted, citing *United States v. Mapp* (2d Cir. 1973) 476 F.2d 67, 80.) The factors constituting "immediate control" include: (1) whether the suspect was armed; (2) whether the suspect was handcuffed or otherwise restrained; (3) whether another person might assist the suspect; (4) the accessibility of the area searched; and (5) the police's physical control over the situation, including numbers of officers at the scene. (*Lyons, supra,* 706 F.2d at p. 330.)

Here defendant was not armed or suspected to be armed. She was handcuffed, guarded by three sheriff's deputies, and hardly likely to be helped by her distressed child. Furthermore, the area where the black pouch was discovered, tucked under the mattress, was not accessible to a handcuffed person unless defendant could have lifted the mattress using her cuffed hands and grabbed the pouch with her teeth.

The present case is factually almost identical to *United States v. Blue* (2d Cir. 1996) 78 F.3d 56, in which federal agents raided an apartment, handcuffed Blue in a prone position on the floor and then performed a security search. During the search, the agents lifted a mattress and discovered a

machine gun and ammunition clip. (*Id.* at p. 58.) The appellate court reversed the trial court's determination the area was within the immediate reach of a codefendant because the suspects were handcuffed and at least two feet away from the bed and guarded by several agents. The court concluded: "Given the small size of the one-room apartment and the fact that [defendants] were secured during the entire time in question, there was no possibility that either one of them could reach deep into the interior of the bed without being stopped by Agent Fernandez or one of the other agents." (*Id.* at p. 60; see also *United States v. Cueto* (5th Cir. 1980) 611 F.2d 1056; *United States v. Bonitz* (10th Cir. 1987) 826 F.2d 954; *Lyons, supra,* 760 F.2d at p. 330.)

The present case is not factually similar to *People v. Summers* (1999) 73 Cal.App.4th 288 [86 Cal.Rptr.2d 388]. In that case, police served Summers, who lived in a small trailer, with an arrest warrant. Accompanied by Summers's female companion, the police awoke him as he slept. Summers identified himself, stood up, put on his pants, and was handcuffed by one officer while the other kept an eye on the woman and watched for the possible return of another absent male occupant of the trailer. One officer escorted Summers toward the door while the other patted down the bed where he had been sleeping. As the officer moved the pillow, he saw a sawed-off shotgun between the mattress and the headboard. When the shotgun was first observed, Summers was roughly 10 feet away.

In deciding the seizure of the gun was lawful, the *Summers* court commented: "When discovered, the gun was within the immediate area of the still-being-removed arrestee, there was a female present who was not previously known to the officers, and there was another male roommate somewhere nearby whose presence away from the immediate premises had not yet been confirmed. . . . [¶] . . . This was not a cold arrest scene with a long-gone suspect. He was still being removed from the cramped premises; one roommate was present and free of police control, and another was unaccounted for when the weapon was chanced upon. This was a fluid situation in close quarters; and a court could properly find, as we do, that the circumstances. justified reasonable precautions for the safety of everyone involved. . . . The warrantless seizure of the weapon a few minutes later while the premises were still under the lawful control of the officers was . . . lawful." (*Summers, supra,* 73 Cal.App.4th at pp. 290–291.)

The same justifications did not exist here. Only one adult, the handcuffed defendant, was present. She could not reach the hidden contraband. There is no evidence the distraught child posed a threat to anyone. No gun was involved. Simply put, there were no circumstances justifying "reasonable precautions for the safety of everyone involved." The evidence of the seized contraband should have been suppressed.

Appellant's petition for review by the Supreme Court was denied October 12, 2005.