[No. H031174. Sixth Dist. Oct. 29, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
RAUL ANTHONY LEAL, Defendant and Appellant.

## COUNSEL

Law Offices of Jonathan E. Berger, Jonathan E. Berger; Law Offices of George L. Schraer and George L. Schraer for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman, Laurence K. Sullivan and Aileen Bunney, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DUFFY, J.**—Following denial of his motion to suppress evidence (Pen. Code, § 1538.5),[1] defendant Raul Anthony Leal pleaded no contest to obliterating the identification of a firearm (§ 12090). The trial court placed defendant on probation for three years subject to various conditions. On appeal, defendant contended that the trial court erred by denying his motion to suppress. He argued that the search conducted incident to his arrest was beyond the scope of the arm's reach rule of *Chimel v. California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. He also challenged the imposition of a probation condition that he may not be present at any court proceeding or in any courthouse building unless he is scheduled for a court hearing or has the

---

[1] All further statutory references are to the Penal Code.

permission of his probation officer. He contended that the condition was unreasonable and violated his constitutional rights to travel and to attend court proceedings.

This court reversed the judgment on the basis of defendant's first claim. The California Supreme Court granted the People's petition for review and deferred action pending the United States Supreme Court's disposition of *Arizona v. Gant* (2009) 556 U.S. ___ [173 L.Ed.2d 485, 129 S.Ct. 1710]. On June 10, 2009, after the United States Supreme Court handed down its decision in *Gant*, the California Supreme Court transferred this case to us with directions to vacate our decision and to reconsider the cause in light of *Gant*. We have received supplemental letter briefs from the parties addressing *Gant*'s applicability to this case. We will rely on our prior reasoning and, for the reasons stated in our prior opinion, reverse the judgment. Essentially, we will reiterate much of our prior opinion but will discuss *Gant* and the parties' supplemental letter briefs in a new section.

In sum, because we find that the search conducted following defendant's arrest violated the Fourth Amendment to the United States Constitution, a violation of sufficient gravity to entitle him to the remedy of suppression of the evidence, we will reverse the judgment.

## BACKGROUND

By a complaint filed August 11, 2005, defendant was charged with obliterating the identification of a firearm (§ 12090) and actively participating in a criminal street gang (§ 186.22, subd. (a)), both felonies. The complaint further alleged that the section 12090 offense was committed for the benefit of or in association with a criminal street gang. (§ 186.22, subd. (b)(1).) On December 21, 2005, defendant filed a motion to suppress evidence—a handgun—seized from his house on the day of his arrest. On February 9, 2006, the trial court heard the motion in conjunction with the preliminary examination. The testimony at that hearing was as follows.

Salinas Police Sergeant David Shaw went to defendant's house around 4:48 p.m. on August 1, 2005, with four other officers in order to serve two outstanding misdemeanor arrest warrants on defendant. Two officers went to the back of the house while Shaw and two other officers went to the front. When Officer Schwaner knocked on the front door, they heard a male utter from inside the house, words similar to "who's there?" Officer Schwaner identified himself as a Salinas police officer. No further response came from inside the house for quite some time, but one of the officers covering the back of the house heard a male voice coming from inside the back of the house shortly after the officers knocked on the front door.

The officers continued to knock on the front door and windows and called for defendant to emerge. They were aware that defendant's grandmother had reported that defendant might be armed with a gun and using drugs. Also, the police had heard that defendant "was upset with his daughter, who had told the grandmother that he was a gang member."

After almost 45 minutes, defendant opened the door and stood in the threshold. Officer Schwaner told him to turn around, handcuffed him, and led him away, explaining that there were warrants for his arrest. As Officer Schwaner was securing defendant in a patrol car about 30 to 38 feet away, the other officers entered the house to make sure nobody else was inside it.

After finding nobody else inside the house, Sergeant Shaw searched the area immediately adjacent to where defendant was standing when he was taken into custody. A small rocking recliner sat about a foot from where defendant had been standing at the front door. A sweatshirt was on the chair. Sergeant Shaw lifted the sweatshirt and found a semiautomatic pistol tucked between the arm and the cushion of the recliner. The pistol, which was loaded and had had its serial numbers removed, was found about two or three minutes after defendant was arrested. No weapons were found on defendant.

After the trial court denied defendant's motion to suppress, he waived further hearing on the substantive charges and the court held him to answer. An information was filed February 14, 2006, alleging the same charges as had the complaint. On April 11, 2006, defendant renewed his motion to suppress and the court considered it at a hearing on April 21, 2006.

The trial court recognized that the search was problematic under the Fourth Amendment to the United States Constitution, but ultimately found it valid. In so doing, it relied in part on federal circuit court decisions. The court stated, as relevant here: "I agree . . . that there was no actual danger for the officers at the time that this search of the chair actually took place. [¶] . . . [¶] [But the prosecutor] is exactly correct that what the federal courts are trying to do is set out a rule that the officers comprehend . . . . It has to be within the grabbing area of the arrestee and take place reasonably contemporaneous with the arrest. . . . [¶] . . . [W]as it reasonable at that point for the detective to lift up the shirt and discover the gun[?] I think, under the circumstances here, where it is a very brief period of time where it's in conjunction with a protective sweep where they had information that the defendant may well have been in possession of a weapon and/or drugs that it was unreasonable [*sic*] to infer [*sic*] the detective to pick up the shirt. [¶] Seems to me what's really happening here . . . was a second basis besides officer safety, [and] that is preservation of the evidence. Seems to me the federal courts are now moving to extend the preservation aspect of this. For instance, the gun is not

only a safety issue, it is also contraband and also the drugs, if they were there, would have been contraband. I think they're giving the officers more latitude to seize contraband where it's right there where they arrest the person. [¶] . . . [¶] It sounds from the description that they did a protective sweep to make sure no one else was around, then, [lo] and behold, there is a gun which they had reason to believe might be there."

An amended information was filed October 11, 2006, adding a felony charge of possession of a firearm with identification numbers removed (§ 12094, subd. (a)), with an allegation that the offense was committed for the benefit of or in association with a criminal street gang (§ 186.22, subd. (d)). On November 30, 2006, defendant pleaded no contest to the section 12090 charge on condition that the remaining counts and gang allegations be dismissed, and that he be placed on probation.

## DISCUSSION

Because it violated the Fourth Amendment to the United States Constitution to search defendant's premises without a warrant after he had been removed to a police car and the police had ascertained that the premises were secure, and because the conduct of the police in searching defendant's residence was sufficiently at odds with established Fourth Amendment principles to entitle defendant to the suppression of the evidence thereby obtained, we must reverse the judgment.

### I. *Facts*

The facts relevant to our disposition of defendant's Fourth Amendment claim are these:

The police officers, bearing an arrest warrant for two misdemeanors[2] but no search warrant, demanded that defendant emerge from his house so they could arrest him.

Defendant opened his front door and an officer handcuffed him and further secured him by leading him away from the premises and confining him in a police car in the house's driveway. The officer escorted defendant some 30 to 38 feet from his place of arrest to his place of confinement.

Several police officers searched defendant's "very small residence" and found no one else in it.

---

[2] The parties do not describe the misdemeanors on which the arrest warrants were based, and we have not seen the offenses described in the record. There is no reason to believe that the misdemeanors were gun related.

Two or three minutes later, with the scene secure, officers' safety assured, and defendant unable to reach or destroy any evidence in the house, a police officer searched the area near the front door—the site of defendant's arrest—and found the handgun under a sweatshirt. The police still lacked a search warrant.

## II. *Analysis*

### A. *Standard of Review*

■ "In ruling on a motion to suppress [§ 1538.5], the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. [Citation.] The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Hoyos* (2007) 41 Cal.4th 872, 891 [63 Cal.Rptr.3d 1, 162 P.3d 528].) On independent review of the ultimate question, i.e., the validity of the state's action under the Fourth Amendment to the United States Constitution, i.e., we conclude that it was invalid.[3]

### B. *Substantive Law*

#### 1. *The Law Prior to* Arizona v. Gant

■ In our prior opinion, which we rendered before the United States Supreme Court's decision in *Arizona v. Gant, supra*, 556 U.S. ___ [129 S.Ct. 1710], we analyzed the case in these terms: "The Fourth Amendment provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' 'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' [Citation.] With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." (*Kyllo v. United States* (2001) 533 U.S. 27, 31 [150 L.Ed.2d 94, 121 S.Ct. 2038].)

■ The limited scope of one of the "few exceptions" (*Kyllo v. United States, supra*, 533 U.S. at p. 31) to the warrant requirement is set forth in *Chimel v. California, supra*, 395 U.S. 752, which outlines the "proper extent"

---

[3] California law follows Fourth Amendment standards. (*People v. Robles* (2000) 23 Cal.4th 789, 794 [97 Cal.Rptr.2d 914, 3 P.3d 311].)

of "the 'search incident to arrest' principle" (*id.* at p. 762). First, to effect the arrest in a safe manner, "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." (*Id.* at p. 763.) Second, the police may conduct a "search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." (*Ibid.*) For the foregoing purposes only, "the area into which an arrestee might reach in order to grab a weapon or evidentiary items"—i.e., "the area 'within his immediate control' "—is "governed by a like rule." (*Ibid.*)

The handgun found in defendant's home was found in the area that was under his immediate control when he was arrested. The question, though, is whether it was under his immediate control when he was confined in a police car in handcuffs at some distance from the premises. The answer, plainly, is no, and thus the warrantless search was unreasonable under the Fourth Amendment. " 'Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.' " (*Chambers v. Maroney* (1970) 399 U.S. 42, 47 [26 L.Ed.2d 419, 90 S.Ct. 1975].) "[T]he reasons that have been thought sufficient to justify warrantless searches carried out in connection with an arrest no longer obtain when the accused is safely in custody at the station house" (*ibid.*)—nor when the suspect is safely lodged in a police car outside the home.

█ A different rule of reasonableness applies when the police have a degree of control over a suspect but do not have control of the entire situation. In such circumstances—e.g., in which third parties known to be nearby are unaccounted for, or in which a suspect has not yet been fully secured and retains a degree of ability to overpower the police or destroy evidence—the Fourth Amendment does not bar the police from searching the immediate area of the suspect's arrest as a search incident to an arrest. (See *Arizona v. Gant, supra*, 556 U.S. at p. \_\_\_, fn. 2 [129 S.Ct. at p. 1731, fn. 2] (dis. opn. of Alito, J.).)

*People v. Summers* (1999) 73 Cal.App.4th 288, 289–291 [86 Cal.Rptr.2d 388], illustrates the point. The suspect was only in the process of being removed (*id.* at p. 290), "there was a female present who was not previously known to the officers," and there was "another male roommate somewhere nearby" (*ibid.*).

█ This case is different. In contrast to *Summers*, in which the suspect "was still being removed" (*People v. Summers, supra*, 73 Cal.App.4th at p. 291), "one roommate was present and free of police control," and "another was unaccounted for" (*ibid.*), the police here had determined that defendant was the only one on the premises during his arrest and they had safely

confined him outside his house and fully secured the scene. Neither he nor anyone else was in a position to jeopardize the officers' safety or destroy evidence. *Summers* properly stated the general rule, namely that when "there is no threat to the officers because the suspect has been immobilized [and] removed, and no one else is present, it makes no [constitutional] sense that the place he was removed from remains subject to search merely because he was previously there." (*Id.* at pp. 290–291.) *Summers* departed from that rule only because the circumstances the case presented were fluid, unstable, and dangerous.

The People rely on *U.S. v. Hudson* (9th Cir. 1996) 100 F.3d 1409, 1412–1413, 1418–1419, *U.S. v. Nohara* (9th Cir. 1993) 3 F.3d 1239, 1243, *U.S. v. Turner* (9th Cir. 1991) 926 F.2d 883, 888, and *People v. Rege* (2005) 130 Cal.App.4th 1584 [30 Cal.Rptr.3d 922]. All of these cases honor *Chimel* in the breach, paying homage to *Chimel* while going beyond what the Fourth Amendment permits under *Chimel*. (E.g., *Hudson*, at p. 1419 [stating that a "search may be conducted shortly after the arrestee has been removed from the area" and announcing another constitutionally questionable rule, namely that a warrantless search of the entire room in which the person was arrested is valid]; *Nohara*, at p. 1243 [tautologically stating that "events between the time of the arrest and search must not render the search unreasonable" and questionably holding that a search is permissible two to three minutes after the arrest with the suspect removed from the room].) Similarly, *Turner*, at pages 886–888, approved a warrantless search of part of a room after the suspect had been handcuffed and removed, partly on the ground that the Constitution should not be " 'entirely at odds with safe and sensible police procedures' " (*id.* at p. 888), but showed unease, stating that "[t]his holding is limited to the narrow facts of a short time span and the arrestee's close proximity" (*id.* at fn. 2).

The reasoning of *U.S. v. Turner, supra,* 926 F.2d 883, is flawed for reasons set forth in Justice Scalia's concurring opinion in *Thornton v. United States* (2004) 541 U.S. 615 [158 L.Ed.2d 905, 124 S.Ct. 2127]. "If 'sensible police procedures' require that suspects be handcuffed and put in squad cars, then police should handcuff suspects, put them in squad cars, and not conduct the search." (*Id.* at p. 627 (conc. opn. of Scalia, J.).) Justice Scalia's opinion also disposes of the view in *People v. Rege, supra,* 130 Cal.App.4th 1584, that police must be " 'remove[d] . . . from the horns of a dilemma which would require them either to [forgo] search incident to arrest, or to keep the suspect at least figuratively within arm's reach while conducting such a search, thereby assuring the very danger it was meant to prevent.' " (*Id.* at p. 1590.) And we are not the first court to decline to rely on *U.S. v. Hudson, supra,* 100 F.3d 1409. (*State v. LaMay* (2004) 140 Idaho 835, 840 [103 P.3d 448, 453].)

The fundamental flaw in the analysis contained in the cases we have criticized "is that it assumes that, one way or another, the search must take place. But conducting a *Chimel* search is not the Government's right; it is an exception—justified by necessity—to a rule that would otherwise render the search unlawful." (*Thornton v. United States, supra,* 541 U.S. at p. 627 (conc. opn. of Scalia, J.).) Agreeing with Justice Scalia, *U.S. v. Yanez* (S.D.Tex. 2007) 490 F.Supp.2d 765, stated: "The twin rationales of *Chimel* make clear that this doctrine is an exception to the warrant requirement borne of necessity— for the preservation of probative evidence and officer safety." (*Id.* at p. 776.)

The People further rely on *U.S. v. Fleming* (7th Cir. 1982) 677 F.2d 602, 605–608. Like *U.S. v. Turner, supra,* 926 F.2d at page 888 (which relied on *Fleming*), *Fleming* held that it "does not make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures. Thus handcuffing [one of two suspects] and having reinforcements enter [the other suspect's] house should not be determinative, unless we intend to use the Fourth Amendment to impose on police a requirement that the search be absolutely contemporaneous with the arrest, no matter what the peril to themselves or to bystanders." (*Fleming,* at p. 607, fn. omitted.)

*Fleming*'s reasoning must be understood in the context of the circumstances that case presented. One suspect had been handcuffed and taken out to the street but not far away from the arrest scene. (*U.S. v. Fleming, supra,* 677 F.2d at p. 605.) The arrest of both suspects had involved a pursuit and a "scuffle." (*Ibid.*) Events had unfolded rapidly and the scene was still not entirely secure despite the handcuffing of one suspect and the arrest of the other, whose continued ability to resist *Fleming* does not discuss (see *id.* at pp. 605–607). " 'Handcuffs are a temporary restraining device; they limit but do not eliminate a person's ability to perform various acts. They obviously do not impair a person's ability to use his legs and feet, whether to walk, run, or kick. Handcuffs do limit a person's ability to use his hands and arms, but the degree of the effectiveness of handcuffs in this role depends on a variety of factors, including the handcuffed person's size, strength, bone and joint structure, flexibility, and tolerance of pain. Albeit difficult, it is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person or within lunge reach, and in so doing to cause injury to his intended victim, to a bystander, or even to himself.' " (*U.S. v. Yanez, supra,* 490 F.Supp.2d at p. 776.) We agree with *Fleming* but believe the decision is limited to its facts.

■ It has been said that the equal protection clause of the Fourteenth Amendment, "lest we lose sight of the forest for the trees, does not require what it barely permits." (*Coalition for Economic Equity v. Wilson* (9th Cir. 1997) 122 F.3d 692, 709.) Similarly, the Fourth Amendment does not force the police to do what it barely allows them to do. The police are required to arrest suspects within the limits legally permitted, and they must do all they can to ensure their safety and the preservation of potential evidence during a lawful arrest. Thereafter, if the police persuade an impartial judge to issue a search warrant, they may search the scene. Only if the situation remains unstable, i.e., police officers must arrest someone but by doing so unavoidably place themselves in personal peril or incur the risk of losing evidence, may the police conduct a warrantless search in the suspect's immediate vicinity during the arrest. (*Chambers v. Maroney, supra*, 399 U.S. at p. 47; *Chimel v. California, supra*, 395 U.S. at p. 763.) In other words, the law does not *invite* the police to imperil themselves or risk the loss of evidence simply to avoid the warrant requirement; rather, it *tolerates*, despite the Fourth Amendment's guarantee against warrantless searches, forgoing the warrant requirement when, during a lawful arrest, circumstances beyond the control of the police urgently require a protective search.

Accordingly, we do not agree with the analysis found in *People v. Rege, supra*, 130 Cal.App.4th 1584; rather, we agree with *People v. Summers, supra*, 73 Cal.App.4th 288. As for the federal circuit decisions we have criticized, we need not follow them (*People v. Mejia* (2007) 155 Cal.App.4th 86, 99 [65 Cal.Rptr.3d 776]) and will not do so.

■ "The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." (*Franks v. Delaware* (1978) 438 U.S. 154, 164 [57 L.Ed.2d 667, 98 S.Ct. 2674].) Because the search of defendant's house did not fall within the scope of the exception delineated in *Chimel v. California, supra*, 395 U.S. 752, the search violated the Fourth Amendment.

### 2. *Effect of* Arizona v. Gant; *Remedy*

As noted, the California Supreme Court transferred this case to us with directions to vacate our decision and to reconsider the cause in light of *Arizona v. Gant, supra*, 556 U.S. ___ [129 S.Ct. 1710].

Defendant argues that nothing in *Gant* undermines the reasoning of our prior opinion, in which we found the search unlawful. In substance, he urges that we adhere to our prior reasoning.

For their part, the People acknowledge that the search in this case would have violated the Fourth Amendment if it had taken place after the decision in *Gant*. They argue, however, that because the search preceded *Gant*, it was valid under the "broad authority" the law conferred on police actions in these circumstances prior to *Gant*. They further argue that, under *Herring v. United States* (2009) 555 U.S. ___ [172 L.Ed.2d 496, 129 S.Ct. 695], the exclusionary rule should not be applied to suppress the evidence of the altered firearm even if we adhere to our prior reasoning that there was a Fourth Amendment violation.

■ Nothing in *Gant* derogates from our prior reasoning; rather, it reinforces it. In the main, *Gant* deals with an obliquely different area of Fourth Amendment law than does this case. *Gant* clarified the scope of the permissibility of police searches of vehicles following an arrest and the safe confining of the arrestee to a nearby police car. The case has little bearing on this one, except that *Gant*'s reaffirmation of *Chimel v. California, supra*, 395 U.S. 752, is congruent with our interpretation of *Chimel*. "In *Chimel*, we held that a search incident to arrest may only include 'the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' [Citation.] That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. . . . If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." (*Arizona v. Gant, supra*, 556 U.S. at p. ___ [129 S.Ct. at p. 1716].)

Bearing in mind that *Gant*, to the extent it is relevant here, only adds new weight to our conclusion that the police violated defendant's Fourth Amendment rights, we turn to the People's argument that even if that is so, defendant is not entitled to the remedy of suppression of the firearm evidence.

■ "The exclusionary rule allows '[t]he criminal . . . to go free because the constable has blundered.' [Citation.] . . . '[T]he purpose of the exclusionary rule "is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." [Citation.]' " (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 541 [79 Cal.Rptr.2d 672, 966 P.2d 983].)

Nevertheless, because the cost to society of freeing a known criminal is high, availability of the ultimate remedy, i.e., suppressing the use of the evidence obtained through a Fourth Amendment violation, is constrained. (See generally *Herring v. United States, supra,* 555 U.S. ___ [129 S.Ct. 695].)

The Fourth Amendment does not contain a right to have otherwise admissible evidence excluded from use against oneself. Instead there is a "judicially created rule" (*Herring v. United States, supra,* 555 U.S. at p. ___ [129 S.Ct. at p. 699]) mandating such exclusion as necessary " 'to safeguard Fourth Amendment rights generally through its deterrent effect' " (*ibid.*). It is applied when the cost of doing so is justified by a sufficient likelihood that the remedy will deter future particularly undesirable conduct by the state, but only then. (See *id.* at pp. ___–___ [129 S.Ct. at pp. 700–702].) In other words, whether an individual is entitled to have unlawfully seized evidence excluded in trial proceedings "turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." (*Id.* at p. ___ [129 S.Ct. at p. 698].) "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." (*Id.* at p. ___ [129 S.Ct. at p. 702].)

■■■ Under *Herring v. United States, supra,* 555 U.S. ___ [129 S.Ct. 695], evidence seized in violation of the Fourth Amendment is to be suppressed when, under an objective standard of deterrence and culpability involving a reasonably well-trained officer (555 U.S. at p. ___ [129 S.Ct. at p. 703]), a court finds that the police have engaged in "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence" (*id.* at p. ___ [129 S.Ct. at p. 702]; see also *id.* at p. ___ [129 S.Ct. at p. 703]; cf. *id.* at p. ___ [129 S.Ct. at p. 704] [concluding paragraph contrasting systemic error and recklessness with negligence but not mentioning gross negligence]).

Recurring or systemic negligence is not at issue here, so whether defendant is entitled to the remedy of suppressing evidence turns on whether the action of the police in searching his residence after confining him securely in a police car was otherwise sufficiently unsupportable under the Fourth Amendment.

The People state that under the current state of the law, i.e., the decision in *Arizona v. Gant, supra,* 556 U.S. ___ [129 S.Ct. 1710], defendant would be entitled to have the firearm evidence suppressed. They argue, however, that police conduct here cannot be said to be grossly negligent or worse when the state of the law prior to *Gant* was, in their view, muddled. (See *id.* at p. ___,

fn. 11 [129 S.Ct. at p. 1723, fn. 11] [because a mistakenly liberal reading of police authority to search automobiles following an arrest was "widely accepted" prior to *Gant,* "the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding"].)[4]

Contrary to the People's view, however, the law was not sufficiently muddled at the time of the search for us to support their view about the police search of defendant's residence without a warrant. As we have explained, various federal Court of Appeals decisions departed from *Chimel v. California, supra,* 395 U.S. 752, but *Chimel,* which is binding on California police officers, itself was clear. The search of defendant's residence was entirely at odds with *Chimel* and with basic Fourth Amendment principles. It is bedrock Fourth Amendment law that the police may not rummage through a person's home without a warrant. As stated, " 'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " (*Kyllo v. United States, supra,* 533 U.S. at p. 31.)

The violation was serious enough to warrant giving substance to the Fourth Amendment's promise of protection from state intrusion by suppressing the firearm evidence against defendant. The need " ' "to compel respect for the constitutional guaranty in the only effectively available way" ' " (*Wiley v. County of San Diego, supra,* 19 Cal.4th at p. 541) is at its acme when a police search of one's home is involved.

Accordingly, we will direct the trial court to enter a new order granting defendant's motion to suppress the firearm evidence.

---

[4] In turn, defendant brings to our attention two recent decisions that have held that evidence obtained under searches and seizures unlawful under *Gant* must be excluded notwithstanding *Herring.* (*U.S. v. Gonzalez* (9th Cir. 2009) 578 F.3d 1130; *U.S. v. Buford* (M.D.Tenn. 2009) 623 F.Supp.2d 923.) However, those cases are, as defendant notes, automobile cases whose resolution is squarely governed by *Arizona v. Gant, supra,* 556 U.S. ___ [129 S.Ct. 1710]. The searches and seizures in those cases were proper under pre-*Gant* law but were rendered invalid following *Gant,* and the courts had to decide, in the words of *Gonzalez,* whether to "appl[y] the good faith exception to the scenario we face: a search [validly] conducted under a then-prevailing interpretation of a Supreme Court ruling, but rendered unconstitutional by a subsequent Supreme Court ruling announced while the defendant's conviction was on direct review." (*Gonzalez, supra,* at p. 1132; see *Buford, supra,* at pp. 925–926.) The search of defendant's residence, by contrast was never valid, either before or after *Gant.* We agree with defendant that his case is governed by *Chimel v. California, supra,* 395 U.S. 752, and reiterate that *Gant* only reinforced the reasoning and holding of *Chimel.* Accordingly, we need not further consider *Gonzalez* or *Buford.*

### 3. *Validity of Probation Condition*

Because we reverse the judgment on the foregoing grounds, we need not address, and do not address, defendant's claim that a probation condition was invalid.

### DISPOSITION

The judgment is reversed and the case is remanded to the trial court with directions to permit defendant to withdraw his no-contest plea, to vacate its order denying the motion to suppress, to enter a new order granting the motion to suppress, and to undertake any other necessary proceedings in accordance with applicable law.

McAdams, J., concurred.

**BAMATTRE-MANOUKIAN, Acting P. J.,** Concurring.—I concur in the judgment only. When this court's decision was originally filed in February 2008, I wrote a dissent in which I stated: "The officers acted reasonably and out of concern for their safety when they handcuffed and moved defendant and then delayed the search for two to three minutes in order to do a protective sweep of the residence. The officers were aware that defendant was reportedly possibly armed with a firearm and using drugs, they did not take defendant far away, and they did not unreasonably delay before conducting the search. [Citations.] The loaded pistol was found in the recliner about two or three minutes after defendant was arrested and while defendant was still at the scene of the arrest. [Citations.] *The officers were not required 'either to [forgo] search incident to arrest, or to keep [defendant] at least figuratively within arm's reach [of the recliner] while conducting . . . a search' of it.* [Citations.] To keep defendant at the exact location of the arrest while conducting an absolutely contemporaneous *Chimel* search would assure the very danger the search was meant to prevent."

In *Arizona v. Gant* (2009) 556 U.S. ___, ___ [173 L.Ed.2d 485, 129 S.Ct. 1710], the United States Supreme Court held that, although "officers may search a vehicle when genuine safety or evidentiary concerns encountered during the arrest of a vehicle's recent occupant justify a search" (556 U.S. at p. ___ [129 S.Ct. at p. 1721]), "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee

is unsecured and within reaching distance of the passenger compartment at the time of the search." (556 U.S. at p. ___ [129 S.Ct. at p. 1719], fn. omitted.) In light of the decision in *Gant* and our Supreme Court's direction to reconsider this cause in light of *Gant*, I conclude that defendant's motion to suppress must now be granted.